THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AVELINO ALMODÓVAR, Defendant and Appellant.

No. 8015. Argued April 15, 1940.—Decided April 19, 1940.

*María Luisa Capó* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is an appeal from a judgment convicting the defendant who was sentenced to pay $25 fine or in default thereof to a day in jail for each dollar of the fine left unpaid, and the costs.

The defendant owns a milkshop and a dairy in the town of Sabana Grande. On March 16, 1939, the health inspector of said town, while taking samples of milk, noticed that the

defendant and his son Julio Almodóvar at Veinticinco de Julio Street were pushing a cart in which they were carrying two cans containing about ten quarts of milk from defendant's farm. The inspector followed them and on reaching the milkshop the defendant emptied the two cans into another vessel which contained some milk just brought at that moment from another dairy. After the mixing, the health inspector took the sample which turned out to be adulterated milk. The inspector further testified that he had been working as health inspector in Sabana Grande for two years and that during all this time he had taken weekly samples of milk from the milkshop of the defendant, which had never shown to be adulterated.

The evidence for the defendant showed that nobody else was in the milkshop at the time of the taking of the sample, as it was very early. The health inspector testified that there were several people in front of the counter, but it appears from the evidence for both sides that although the milk had just arrived at the shop and was meant to be sold for human consumption, it had not yet begun to be sold to the public. In other words, the establishment, although its doors were open, was not yet open to the public for transacting business.

The defendant did not challenge the result of the analysis but alleged that the evidence before the trial court was insufficient to sustain the judgment against him and invokes in his favor, among others, the cases of *People v. Andino*, 21 P.R.R. 211, and *People v. Pérez*, 23 P.R.R. 815. In *People v. Andino, supra,* the facts shown are substantially similar to those of the case at bar, with the only difference that in the former all the milk there came from the dairy of a third party, whereas in the latter, as we have seen, it came from two different dairies, such difference in our opinion being immaterial, owing to the fact that, another milk having arrived at the milkshop with which it was mixed before the sample was taken, it became impossible to determine indeed

whether or not it was the milk brought from defendant's dairy that had been adulterated, and as the establishment had not started doing business, even accepting the result of the analysis, it can not be held that the defendant was offering for sale to the public adulterated milk.

In *People* v. *Andino, supra,* this court said:

"Juan Requena, a health inspector, testified that he seized some milk in the shop of the defendants which was shown by the proof to be adulterated. The inspector, being cross-examined by the defence and examined as well by the court, stated that the milk alleged to be adulterated had just arrived at the shop of the defendants when he himself arrived; that the milk had just been placed in the pail and that the milkman was going away with the jar he had just emptied. This was substantially all the evidence on the part of the government and it was not enough to convict these defendants.

"All that the evidence disclosed is that the defendants had just received from a third person adulterated milk. There is not a scintilla of evidence that they offered the adulterated milk for sale. There is nothing to show even that the defendants would have offered the milk for sale. The proof only shows that they came into the possession of adulterated milk, which is not tantamount to proving that they were offering it for sale. The defendants might have examined the milk and refused it. Be that as it may, the proof does not show the crime charged in the complaint or under the statute. This is a criminal proceeding and one that dispenses with proof of a criminal intent and hence there is, perhaps, a greater reason for proving beyond reasonable doubt the elements named by the statute."

In *People* v. *Pérez, supra,* distinguished from the *Andino* case, it was said:

". . . . The appellant contends also that according to the case of *The People* v. *Andino,* 21 P.R.R. 211, the mere possession of adulterated milk is not sufficient proof that it was kept for sale or that it was offered for sale, but that case is inapplicable to this because although it was there held that the proof of possession was of itself insufficient to establish the guilt of the accused, the reason was that the milk was received just at the moment when the sanitary inspector arrived and had just been emptied into the receptacle and that the cartman was leaving with the empty cans—facts which are not present in this case. In other words, the defendant was acquitted

512

in that case because there was actually no time for him to have offered the milk for sale."

The decision in *People* v. *Nieves,* 55 P.R.R. 877, cited by the prosecuting attorney, is not applicable to the case at bar. In the above case, the general rule laid down in *People* v. *Pérez, supra,* was applied, owing to the absence of the special circumstance to be found in this and in the *Andino* cases, and, moreover, because in the case of *People* v. *Nieves, supra,* the establishment was open to the public, which circumstance, as we have seen, does not exist 'in the case at bar.

From the foregoing, it is our opinion that the appeal must be sustained, the judgment appealed from reversed and the defendant discharged.